McIlvaine, J.
There is no objection made as to the-length of time this bill was in circulation before it was transferred to plaintiffs; and it is admitted that they received it without any knowledge of the fraudulent practices of Mara,, and that they paid full value for it.
The question, then, in the case, is this: Can the defendants, as against the plaintiffs, who are bona fide holders for value, set up the fraud practiced by Mara upon Cochran, Holmes & Co. as a defence to this action ? It is conceded, that the defendants may do so if Cochran, Holmes & . Co. could set it up if the action were against them; and it is also-conceded that if the legal title to the bill is in the plaintiffs such defence cannot be sustained.
It appears from the agreed statement of facts, that all the *482 parties (except Mara) to the transactions stated, acted in good faith and in the usual mode of doing such business. But Mara, for the purpose of defrauding the general government out of its revenues, and shielding himself from detection, assumed the name of “Charles Clark.” And, in that assumed name, he bought the nutmegs from Wreford, Dillon & Co., in Canada, and smuggled them into the United States, at Detroit; and in that name shipped them from Detroit to Cochran, Holmes & Co., at Cincinnati, to be sold by them on commission, and asked for return of sales and proceeds. Cochran, Holmes & Co. made return of sales to him, and having indorsed this bill to “Charles Clark,” remitted it to Detroit to that address. Mara received it, and afterward, indorsing it in the name of “Charles Clark,” delivered it, for a valuable consideration, to Wreford, Dillon & Co., from whom the plaintiffs received it. It is, also, conceded that Wreford, Dillon & Co. had no knowledge of Mara’s fraud, or that his name of Charles Clark was assumed.
Now, the judgment below must be reversed, if either of the following propositions can be maintained, to wit:
1. That the legal title to this bill passed from Cochran, Holmes & Co. to Wreford, Dillon & Co., by the indorsement of the former to Mara under his assumed name of “ Charles Clark,” and by his subsequent indorsement by the same name to Wreford, Dillon Co. ; or
2. That Cochran, Holmes &. Co. are estopped, as against the plaintiffs, from denying that the title so passed.
The first proposition we deem it unnecessary to resolve, as an affirmative solution of the second is decisive of this case.
We cannot, however, dismiss the case without remarking, that, by the weight of English cases, and by some American decisions, the indorsement, by Mara, of the name “ Charles Clark,” upon this bill, at the time he delivered it to Wreford, Dillon & Co., was a forgery. Byles on Bills [262] ; 6th ed. of Bayley on Bills, 572; Rus. & Ey. 209; 1 Leach, 94 and 172; East P. C. 940-959 ; 2 Parsons on Bills, 585, and cases cited in notes. Nor can it be doubted, as a general *483 rule, that the title to a bill cannot be transferred by a forged indorsement.
It is well settled, however, both in England and America, that a note or bill knowingly made, drawn, or indorsed to a fictitious person, is to be regarded as made, drawn or indorsed to bearer, and may be transferred by delivery merely. Byles on Bills [61]; 3 T. R. 174, 182, 481; 4 E. D. Smith, 83; Story on Bills, 56 and 200, and notes.
True, this is not such a case; nor is this a case where a bill was intended to be indorsed to a particular person, and the person intended was not in existence, as if, for instance, he were dead, and that fact was not known, and a person, other than the one intended to take, fraudulently indorsed the bill over by using the name of such fictitious person. Such last mentioned indorsement would be a forgery, and ineffectual to transfer title. The title in such case would remain in the first indorser.
But in this case the person intended as indorser, by Cochran, Holmes & Co., was a real person, in actual existence, but designated by a false or assumed name, of which last fact they were ignorant. It matters not whether they were induced to adopt that name, through the fraud of Mara, or by mistake. The person so intended by such false or assumed name, subsequently, by using the same name, indorsed and delivered the bill to an innocent purchaser.
It is questionable whether this last indorsement be a forgery. 22 Iowa, 379. But if it be; it may still be doubted whether it falls within the general rule above stated. Ibid.
If, however, the legal title did not pass from Cochran, Holmes & Co., because there was no “Charles Clark” to take under their indorsement; or to Wreford, Dillon & Co., because Mara’s indorsement was a forgery; still the second proposition, above stated, must be resolved, viz : are the defendants, or Cochran, Holmes & Co., estopped from denying the plaintiffs’ title ?
“The principle of estoppel in pais has a very extended and just application in the law of bills and notes, the doctrines of which are designed to give credit and circulation *484 to negotiable securities, and, to that end, throw its protection around the honest and fair holders thereof.” See 14 Ind. 382 ; 114 Eng. C. L. 426, 432 ; 15 New York, 575 ; 5 Cowen, 688, 711; 22 Iowa, 404; 1 Parsons on Notes and Bills, 560, 589, 244 ; Story on Notes, sec. 80; Edw. on Bills, 250; and Phillips v. Thurn, 114 E. C. L. 694.
Cochran, Holmes & Co., having indorsed this bill to “Charles Clark,” delivered it to William Mara. And, if facts are more significant than words, they intended to indorse it to Mara, as they certainly intended to deliver it to him. By the transfer of the bill, their purpose was to pay for the nutmegs, and they intended to make payment to the person from whom they i*eceived them. Mara was that person. They were ignorant of his true name, and supposed it to be Clark. He had deceived them as to his name, but not as to his identity. He was, in fact, the identical person from whom they had received the nutmegs, and for whom they intended the bill, when they indorsed it to “Charles Clark.”
Suppose Cochran, Holmes & Co., in the presence of Wreford, Dillon & Co., had indorsed the bill to “ Charles Clark,” and delivered it to William Mara, saying this is the amount due you on account of your nutmegs, and Mara had, then and there, indorsed and delivered it to Wreford, Dillon & Co. ? The case would have been, on all fours, with the present; and we think that, under such circumstances, Wreford, Dillon & Co. might well have relied upon the conduct of Cochran, Holmes & Co. as a representation that Mara’s name was Clark, although they had no interest in the transaction between them. It must be kept in mind, that Cochran, Holmes & Co. thus put in circulation a negotiable security, and invited the world to give it credit. We cannot resist the conclusion, that the indorsement, by Cochran, Holmes & Co., to Charles Clark, and their delivery, as part of the same transaction, must be regarded as an affirmation to all persons not otherwise informed, that there was such a person as Charles Clark, and that Mara was that person.
*485 And, if this be so, it follows, upon the plainest principles of right as well as policy, that the defendants should not be permitted, as against an innocent holder for value, and before dishonor, to aver or prove to the contrary.
Judgment reversed, and cause remanded for further proceedings.
Welch, C. J., and White, Day and West, JJ., concurred.